[No. 5401.]

ALEXANDER WEED, JOHN W. FARREN, AND WIL-
LIAM KERR v. GEORGE F. MAYNARD, AUDITOR
OF THE CITY AND COUNTY OF SAN FRANCISCO.

STATUTORY CONSTRUCTION.—An act authorizing and empowering a Board of
Supervisors of a city to keep its streets clean by employing men and carts
for that purpose, and by using the labor of persons sentenced or committed
to the House of Correction, does not compel the Board to adopt the system
which it provides for.

IDEM.—If such act does not repeal a former act empowering said Board to
keep the streets clean in such mode and manner as it may deem best, the
Board, after its passage, may still exercise its discretion as to the mode and
manner of cleaning.

IDEM.—If, upon the face of an act, the Legislative intent is ambiguous, a
judicial reference may be had to the title of the act to assist in determining
its meaning.

The statutes in force in the City and County of San Francisco
in relation to cleaning streets, prior to April 3rd, 1876, empow-
ered the Board of Supervisors to clean said streets, but left the
mode and manner to its discretion.

On the 3rd of April, 1876, the Legislature passed the follow-
ing act:

"Sec. 1. The Board of Supervisors of the City and County
of San Francisco are hereby authorized and empowered to have
the streets in said city and county *kept clean* in the following
manner: From the 1st of October to the 1st of April, in each
year, they may employ not to exceed twenty horses and carts,
with drivers, and twenty-five additional men, as scrapers and
sweepers; and from the 1st of April to the 1st of October, in
each year, fifteen horses and carts, with drivers, and twenty ad-
ditional men, as scrapers and sweepers.

"Sec. 2. The Board of Supervisors shall appoint two compe-
tent persons to superintend said work, at a salary not to exceed
one hundred dollars per month per man.   Said Superintendents
shall each day report, at the office of Superintendent of Public
Streets, the names of all men, and men and teams, employed the
previous day, and where employed.   The report shall also con-
tain the license number on said carts employed.

"Sec. 3. The Board of Supervisors are hereby authorized and

empowered to employ not to exceed ten men and three horses, carts, and men, to clean out and remove all sand and dirt that may accumulate in. the public sewers.

" Sec. 4. The said Board are hereby authorized and empowered to appoint a suitable person to take charge of the work named in sec. 3 of this act, who shall receive a salary not to exceed one hundred dollars per month; said person shall report each day to the Superintendent of Public Streets, as required in sec. 2 of this act.

" Sec. 5. All the work specified in this act shall be done under the supervision of the Street Committee of the Board of Supervisors, and of the Superintendent of Public Streets of the City and County of San Francisco.

" Sec. 6. The Board of Supervisors are hereby invested with full power and authority to cause the persons sentenced or committed to the House of Correction to be employed in cleaning the public streets, highways, and sewers of said City and County of San Francisco.

" Sec. 7. This act shall take effect immediately."

About October 6th, 1873, the Board of Supervisors entered into a written contract with George T. Bromley & Co. to clean the streets of the city for one year from the 20th of September, 1873. Said Bromley & Co. were the owners of certain machinery for doing such work. By the contract Bromley & Co. were to receive a certain sum per mile for performing the work. They fulfilled the contract for the year, and at the end of that time the said Board entered into a parol contract with said Bromley & Co. by which they were to continue cleaning the streets on the same terms as they had been doing under the written contract. The plaintiffs constituted the firm of Bromley & Co. after March 11th, 1876. In June, 1876, the parol contract was reduced to writing, and approved by the Board. Bromley & Co. continued to perform the work, and were paid each month therefor until the month of July, 1876. August 14th, 1876, they presented to the Board their claim for the month of July, amounting to five thousand six hundred and twenty dollars. The claim was audited and allowed by the Board, but the defendant, who was the Auditor of the City and

County, refused to draw a warrant therefor.   He based his refusal on the Act of 1876, claiming that by the provisions of said act the Board was required to clean the streets under the system therein provided for.   This was an application to the District Court for a writ of mandate requiring the Auditor to issue the warrant.   The Court below refused the writ, and the plaintiffs appealed.

*McAllisters & Bergin*, and *J. P. Hoge* and *C. H. Parker*, for the Appellants, argued that by the Act of 1876 the Legislature did not take away from the Board of Supervisors the power which it before possessed of cleaning the streets in such mode and manner as it desired.

*J. M. Coghlan*, also for the Appellants.

The rule of construction to be applied would seem to be that the statute should be construed so as to carry into effect the true intent and meaning of the Legislature ; and that the word *may* in a statute should be construed *must* only in those cases where the Legislature intended to impose a positive duty, and not in those in which it intended to give a mere discretionary power.   (*Bowers* v. *Sonoma Co.* 32 Cal. 66 ; *Miner* v. *Mechanics' Bank, etc.*, 1 Peters, 64 ; *The Newberg Turnpike Co.* v. *Miller*, 5 J. C. R. 112 ; *Malcom* v. *Rogers*, 5 Cowen, 108.)

*W. C. Burnett*, for the Respondent.

*Delos Lake*, also for the Respondent.

By the COURT :

The reargument has satisfied us that the Act of April 3rd, 1876, was intended simply to confer on the Board of Supervisors of the City and County of San Francisco the power to inaugurate the system therein provided for, at their option, and not to deprive them of any powers with respect to street or sewer cleaning, which they already possessed.

None of the provisions of the Consolidation Act relating to the subject are expressly repealed.   The first section of the Act

of April 3rd, 1876, commences: " The Board of Supervisors are hereby *authorized* and *empowered* to have the streets of said city and county *kept clean* in the following manner." The sixth section invests the Board with "full power and authority to cause the persons sentenced or committed to the House of Correction to be employed in cleaning the streets," etc.

Upon no principle of construction can the language of the first section of the act quoted above be held to be *mandatory*, and as making it the absolute duty of the Board to adopt the system which they are authorized to inaugurate; and it has not been pretended by counsel that the sixth section could have any other effect than to give power to the Board, at their option, to make use of the convict labor—a power which, up to the last session of the Legislature, the Board did not possess.

If it could be said that there were words in other parts of the statute which were suggestive of an intention to make the law mandatory, such words could have the effect, at most, only to make the legislative meaning to some extent ambiguous, and this would authorize a judicial reference to the title of the act, which is "An Act to *confer additional* powers on the Board of Supervisors," etc.

But in truth there can hardly be any ambiguity in the body of the statute. The evident purpose is to give the Board the discretion to resort to a special system, the principal and novel element of which is the employment of prison labor; and if in the description of the plan the word " shall " is used in defining the duties of the Board, it is clearly to be understood as declaring the affirmative duty of the Board in the particulars with reference to which the word is used, *provided*, or in case that the system should be adopted.

Judgment reversed and cause remanded, with directions to enter judgment in accordance with the prayer of the petition. Remittitur forthwith.